**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| MODULUS FINANCIAL ENGINEERING INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NVIDIA Corp.,<br><br>Defendant. | Case No. 1:24-cv-362-RP<br><br>[redacted] |

**NVIDIA CORPORATION'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' REQUESTS FOR EQUITABLE RELIEF**

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ....................................................................................................3

BACKGROUND ....................................................................................................5

A. Plaintiffs Use The Name "Modulus" To Market Software For Building Financial Exchanges. ....................................................................................................5

B. In 2021, NVIDIA Began Using The Name "NVIDIA Modulus" With Its Free Toolkit For Building And Training Physics-Informed AI Models. ....................................................................................................5

C. Plaintiffs Filed This Lawsuit Accusing NVIDIA Of Trademark Infringement, And Seek Disgorgement Of NVIDIA's Profits From An Unaccused Product. ....................................................................................................6

LEGAL STANDARD ....................................................................................................7

ARGUMENT ....................................................................................................7

I. PLAINTIFFS HAVE NO EVIDENCE THAT DISGORGEMENT IS EQUITABLE IN THIS CASE. ....................................................................................................7

A. Fifth Circuit Law Recognizes The Primary Importance Of Palming Off And Diverted Sales In The Six-Factor Disgorgement Analysis. ....................................................................................................7

B. Plaintiffs Have No Evidence Of Palming Off Or Diverted Sales. ....................................................................................................8

1. Plaintiffs Have No Evidence That NVIDIA Palmed Off Either Its Free Physics Toolkit Or NVAIE As Plaintiffs' Product. ....................................................................................................8

2. Plaintiffs Have No Evidence That Any Of Their Sales Were Diverted To NVIDIA's Free Physics Toolkit Or NVAIE. ....................................................................................................10

C. Plaintiffs Have No Evidence Raising A Genuine Issue of Fact Regarding The Remaining Equitable Factors. ....................................................................................................13

1. Plaintiffs Have No Evidence That NVIDIA Chose The Name "Modulus" With The Intent To Confuse Or Deceive. ....................................................................................................13

2. Alternative Remedies Have Resolved Plaintiffs' Infringement Claims. ....................................................................................................15

3. Plaintiffs' Years-Long Delay In Filing This Lawsuit Undercuts The Propriety Of A Disgorgement Award. ....................................................................................................16

**Pages**

4. The Public Interest Also Weighs Against Disgorgement. ....................... 16

II. DISGORGEMENT IS ALSO IMPROPER BECAUSE THERE IS NO CAUSAL LINK BETWEEN THE ALLEGED INFRINGEMENT AND NVIDIA'S SALES OF NVAIE. ....................... 17

III. PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION. ....................... 18

CONCLUSION ....................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................7

*Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*,
626 F.2d 193 (1st Cir. 1980)....................10

*Gibson, Inc. v. Armadillo Distribution Enterprises, Inc.*,
2025 WL 2698115 (E.D. Tex. Sep. 22, 2025)....................9

*Joyce Yang Corp. v. Yi-Ding Int'l Holding Co.*,
2024 WL 4101927 (W.D. Tex. July 30, 2024)....................14

*Little v. Liquid Air Corp.*,
952 F.2d 841 (5th Cir. 1992)....................7

*Logan v. Burgers Ozark Country Cured Hams Inc.*,
263 F.3d 447 (5th Cir. 2001)....................8

*McArdle v. Mattel Inc.*,
456 F. Supp. 2d 769 (E.D. Tex. Sep. 13, 2006)....................9

*Neutron Depot, L.L.C. v. Bankrate, Inc.*,
798 F. App'x 803 (5th Cir. 2020)....................15, 18

*New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*,
772 F.2d 25 (3d Cir. 1985)....................19

*Pampered Chef, Ltd. v. Magic Kitchen, Inc.*,
12 F. Supp. 2d 785 (N.D. Ill. 1998)....................10

*Pebble Beach Co. v. Tour 18 I Ltd.*,
155 F.3d 526 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001)....................13, 17, 18

*Quick Techs. v. Sage Grp. Plc*,
313 F.3d 338 (5th Cir. 2002)....................7, 12, 13, 17

*Retractable Techs., Inc. v. Becton Dickinson & Co.*,
842 F.3d 883 (5th Cir. 2016).................... *passim*

*Retractable Techs., Inc. v. Becton Dickinson & Co.*,
919 F.3d 869 (5th Cir. 2019)....................8, 9, 13, 17

*Streamline Prod. Sys. v. Streamline Mfg.*,
851 F.3d 440 (5th Cir. 2017) ....................3, 4, 8, 14

*Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*,
951 F.2d 684 (5th Cir. 1992) .................... *passim*

**Statutes**

15 U.S.C. § 1117....................12

**Other Authorities**

Fed. R. Civ. P. 56(a) ....................7

Defendant NVIDIA Corporation ("NVIDIA") respectfully requests the Court grant summary judgment that Plaintiffs Modulus Financial Engineering, Inc. ("Modulus Financial") and Modulus Global, Inc. ("Modulus Global") (collectively, "Plaintiffs") are not entitled their requested equitable relief of disgorgement or an injunction.

**INTRODUCTION**

In November 2021, NVIDIA changed the name of its ***free*** toolkit for training physics-informed AI models to "NVIDIA Modulus." Three years later, Plaintiffs—[redacted]—filed this trademark lawsuit alleging that NVIDIA's use of the name "Modulus" with its free physics toolkit was likely to cause confusion with their [redacted] Faced with the fact that their allegations are directed to a free product that generates no profit that could even potentially be disgorged, Plaintiffs seek instead to disgorge approximately [redacted] of NVDIA's profits from a different product that does not bear the accused "Modulus" name: NVIDIA AI Enterprise. But Plaintiffs have no evidence that a single dollar in revenue from the NVIDIA AI Enterprise subscription service is attributable to the accused physics toolkit, let alone the name of that physics toolkit.

Fifth Circuit precedent establishes a non-exclusive list of six factors in addressing disgorgement in trademark cases. *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 900–901 (5th Cir. 2016) (internal quotation omitted). This precedent also emphasizes the key importance of two of those factors: "palming off" and "diverted sales and lost profits." *Streamline Prod. Sys. v. Streamline Mfg.,* 851 F.3d 440, 462–63 (5th Cir. 2017); *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 695–96 (5th Cir. 1992). Plaintiffs have no such evidence.

As to palming off, Plaintiffs did not identify any evidence in their interrogatory responses that NVIDIA attempted to deceive its customers into believing its free physics toolkit or NVIDIA AI Enterprise subscription service were Plaintiffs' products. To the contrary, the undisputed

evidence shows that NVIDIA generally markets the products as "***NVIDIA*** Modulus" and "***NVIDIA*** AI Enterprise"—or on ***NVIDIA*** webpages—leaving no doubt for consumers that they are NVIDIA's products.

Similarly, Plaintiffs have no evidence that any of their sales were diverted to NVIDIA. They identified no evidence of diverted sales in their interrogatory responses, and their damages expert [redacted]. Indeed, [redacted] Likewise, Plaintiffs' damages expert [redacted]

Plaintiffs likewise have no evidence raising a triable issue of fact on the remaining factors. Plaintiffs emphasize [redacted] "'mere awareness' of the senior user's mark" is not sufficient to show the defendant had the intent to deceive. *Streamline*, 851 F.3d at 456; *Retractable Techs.*, 842 F.3d at 900–901. Plaintiffs must instead [redacted] "to capitalize on the plaintiff's popularity" or "reputation," *Streamline*, 851 F.3d at 455–56, and they have no such evidence. The undisputed evidence shows [redacted] which is related to the purpose of NVIDIA's physics toolkit of helping to build AI models, not anything to do with Plaintiffs or their trademarks.

Thus, the Court should grant summary judgment on Plaintiffs' claim for disgorgement. The Court should also grant summary judgment on Plaintiffs' request for an injunction because NVIDIA changed the name of the accused physics toolkit in March 2025 to "NVIDIA PhysicsNeMo," eliminating any potential basis for injunctive relief.

## BACKGROUND

### A. Plaintiffs Use The Name "Modulus" To Market Software For Building Financial Exchanges.

Plaintiffs and their CEO (Richard Gardner) claim they have used the name "Modulus" to market financial software since 2002. [redacted] Ex. C at 149:11–15; Ex. E at 6 ([redacted]). [redacted] Ex. C at 140:25–141:2. [redacted] Ex. C at 245:19–24.[1]

### B. In 2021, NVIDIA Began Using The Name "NVIDIA Modulus" With Its Free Toolkit For Building And Training Physics-Informed AI Models.

In 2020, NVIDIA launched a free physics toolkit for building and training physics-informed AI models. Ex. F. That free product, which was first named "NVIDIA SimNet," is used by academic researchers and industrial companies to build AI models that obey the laws of physics. For example, Siemens Gamesa used NVIDIA's physics toolkit to train AI models that simulate the activity of their wind farms, helping "to optimize wind farm layouts." Ex. H at -745.

In 2021, NVIDIA renamed the physics toolkit "NVIDIA Modulus." Ex. I. NVIDIA chose that name because the physics toolkit [redacted] Ex. J at 46:4–8. [redacted]

[1] [redacted]

[redacted]

In March 2025, NVIDIA again renamed the physics toolkit "NVIDIA PhysicsNeMo." Ex. M.

**C. Plaintiffs Filed This Lawsuit Accusing NVIDIA Of Trademark Infringement, And Seek Disgorgement Of NVIDIA's Profits From An Unaccused Product.**

Plaintiffs allege in their Complaint that NVIDIA's use of the name "Modulus" with its physics toolkit "is likely to cause confusion, or to cause mistake, or to deceive consumers" to believe Plaintiffs and NVIDIA are affiliated. *E.g.*, Dkt. 1, ¶ 71. Plaintiffs seek the equitable remedies of disgorgement and an injunction.[2] In support, Plaintiffs served an expert report from Mr. Alexander Clemons on November 22, 2025. Ex. A.[3]

Plaintiffs do not seek disgorgement of profits generated from NVIDIA's physics toolkit, which is a free product. Instead, Plaintiffs seek to disgorge NVIDIA's profits from a different product called NVIDIA AI Enterprise, or "NVAIE." Ex. A at 4. NVAIE is a subscription service that provides enterprise customers (*i.e.*, large businesses) with access to certain NVIDIA software,

---

[2] Plaintiffs also seek damages for alleged lost profits, and NVIDIA separately moves for summary judgment on that claim.

[3] Plaintiffs submitted a second untimely "Supplemental" report from Mr. Clemons on January 28, 2026 that NVIDIA has moved to strike. Dkt. 146.

and also technical support services for several hundred NVIDIA products. *E.g.*, Ex. N at 40:16–22, 47:12–25. 95:17–24. A subscription to NVAIE requires that an enterprise customer enter a contract with NVIDIA [redacted] Ex. N at 21:6–18; Ex. T at -379.

In August 2023, NVIDIA added technical support for its free physics toolkit to NVAIE. Ex. G at -765. Both parties agree that a customer can subscribe to NVAIE without ever downloading the physics toolkit, and a customer could download the physics toolkit without ever subscribing to NVAIE. Ex. N at 125:23–126:7; Ex. B at 93:1–11.

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The mere existence of some factual dispute does not defeat summary judgment; the dispute must be genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Where the nonmovant bears the ultimate burden at trial, the movant may satisfy its burden by showing that the record evidence is insufficient to support an essential element of the opponent's claim. *Little v. Liquid Air Corp.,* 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en banc*, 37 F.3d 1069 (5th Cir. 1994).

## ARGUMENT

### I. PLAINTIFFS HAVE NO EVIDENCE THAT DISGORGEMENT IS EQUITABLE IN THIS CASE.

#### A. Fifth Circuit Law Recognizes The Primary Importance Of Palming Off And Diverted Sales In The Six-Factor Disgorgement Analysis.

While section 1117(a) of the Lanham Act entitles a plaintiff to recover an infringer's profits, such an award is subject to the principles of equity—it "is not automatic." 15 U.S.C. § 1117(a); *Quick Techs. v. Sage Grp. Plc*, 313 F.3d 338, 349-50 (5th Cir. 2002). Courts "consider[] six non-exclusive factors in determining whether an award of profits is appropriate: "(1) whether

the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." *Retractable Techs.*, 842 F.3d at 900–901 (quoting *Quick Techs*, 313 F.3d at 349).

The Fifth Circuit has repeatedly emphasized the importance of "evidence of diverted sales and lost profits" or "palm[ing] off" in the disgorgement analysis. *Streamline,* 851 F.3d at 462–63; *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 882 (5th Cir. 2019) ("[O]ur caselaw . . . establishes that a plaintiff who cannot demonstrate diversion of sales or palming off faces an uphill battle in obtaining disgorgement."); *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 463–65 (5th Cir. 2001) ("[U]nless there is some proof that plaintiff lost sales or profits, or that defendant gained them, the principles of equity do not warrant an award of defendant's profits.").

In *Texas Pig Stands*, for example, the Fifth Circuit overturned a disgorgement award because (1) there was "no indication that [the defendant] attempted to 'palm off' its [products] as those of [the plaintiff]" or "associate their operation with [the plaintiff]"; and (2) there was no evidence of "the diversion of sales" from the Plaintiff to the Defendant. 951 F.2d at 695–96. While neither factor alone was a "prerequisite" to obtaining disgorgement, the absence of both "fatally undercut[] the jury's conclusion" that disgorgement was appropriate. *Id.*

Here, each of the factors undercuts Plaintiffs' request to disgorge ***any*** of NVIDIA's profits, whether for NVIDIA's free physics toolkit that is accused of infringement, or the NVAIE profits that Plaintiffs seek to disgorge.

### B. Plaintiffs Have No Evidence Of Palming Off Or Diverted Sales.

#### 1. Plaintiffs Have No Evidence That NVIDIA Palmed Off Either Its Free Physics Toolkit Or NVAIE As Plaintiffs' Product.

Plaintiffs have no evidence that NVIDIA engaged in "palming off," which occurs "when a Lanham Act defendant attempts to pass off its goods as the plaintiff's." *Retractable Techs*, 919 F.3d at 881; *Gibson, Inc. v. Armadillo Distribution Enterprises, Inc.*, 2025 WL 2698115, at *7 (E.D. Tex. Sep. 22, 2025) (palming off "occurs when a producer misrepresents his own goods or services as someone else's"); *McArdle v. Mattel Inc.*, 456 F. Supp. 2d 769, 783 (E.D. Tex. Sep. 13, 2006) (palming off occurs where "a defendant 'subjectively and knowingly intended to confuse buyers'" (quoting 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 25:3 (4th ed. 2006)).

Here, Plaintiffs made no mention of palming off in response to NVIDIA's interrogatory seeking the bases for their damages claims, Ex. O at 31–33, and their damages expert provides no evidence of palming off in either of his reports. Ex. A; Ex. P. And the evidence ***negates*** any possibility that NVIDIA attempted to palm off either its physics toolkit or NVAIE as Plaintiffs' product.

NVIDIA generally refers to its physics toolkit as "***NVIDIA*** Modulus," leaving no doubt for consumers that it is NVIDIA's—not Plaintiffs'—product. *E.g.*, Ex. Q; Ex. R; Ex. S at 88:16–24 [redacted], 114:21–25 (same).[4] Likewise, NVIDIA uses "***NVIDIA*** AI Enterprise" on its websites and the abbreviation itself, "NVAIE," includes the "NV" reference to NVIDIA. *E.g.*, Ex. AC. Moreover, NVIDIA sells NVAIE to sophisticated enterprise customers, who must enter contracts directly with NVIDIA to subscribe to the service. Ex. N at 14:3–24, 21:11–18. NVIDIA's general practice of using its own name in connection with the physics toolkit

[4] While NVIDIA did occasionally refer to the physics toolkit in shorthand as "Modulus," it did so only when it had already introduced the toolkit as "NVIDIA Modulus" earlier in a webpage or video, or if the webpage or video otherwise refers to NVIDIA. Ex. S at 88:16–24, 114:21–25.

and NVAIE confirms that it did not engage in any palming off. *Fisher Stoves, Inc. v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 195 (1st Cir. 1980) ("In the case of a relatively high-priced, single-purchase article, however, 'there is hardly likelihood of confusion or palming off when the name of the manufacturer is clearly displayed.'"); *Pampered Chef, Ltd. v. Magic Kitchen, Inc.*, 12 F. Supp. 2d 785, 795 (N.D. Ill. 1998) (Courts "seriously doubt whether [a defendant] could be accused of attempting to 'palm off' its [products]" where its "name clearly and unequivocally appears" next to the accused mark).

Finally, like in *Texas Pig Stands*, "the high degree of success [NVIDIA has] enjoyed all over the world militates against the existence of any motive to seek such an association [with Plaintiffs]." *Texas Pig Stands*, 951 F.2d at 695.

**2. Plaintiffs Have No Evidence That Any Of Their Sales Were Diverted To NVIDIA's Free Physics Toolkit Or NVAIE.**

Plaintiffs also have no evidence of "diversion of sales" from Plaintiffs to NVIDIA. *Texas Pig Stands*, 951 F.2d at 695–96. Plaintiffs not only failed to disclose any evidence of diverted sales in their interrogatory responses, Ex. O at 31–33, [redacted] Plaintiffs' failure to disclose any evidence of diverted sales in their interrogatory responses and their [redacted] precludes them from attempting to identify any such evidence now. Regardless, the evidence produced during discovery confirms that none of Plaintiffs' sales were diverted to NVIDIA's physics toolkit or its NVAIE subscription service.

As to NVIDIA's physics toolkit, it is free and thus has no "sales" that could have been diverted from Plaintiff's business. Ex. Q (NVIDIA Modulus is "an open-source, freely available

AI framework for developing physics-ML models.”).

Moreover, [redacted]

Nor is there any evidence that Plaintiffs’ sales [redacted] were diverted to NVIDIA’s NVAIE subscription service. As with the physics toolkit itself, it would have made no sense for a potential customer [redacted] to purchase customer support for a physics toolkit via NVAIE. *See id.*

In addition, NVAIE is far more than just customer support for NVIDIA’s physics toolkit. Instead, it provides access to numerous proprietary software offerings and customer support for ***hundreds*** of software offerings, both proprietary and publicly available—only one of which was temporarily named “NVIDIA Modulus.” Ex. N at 12:19–13:6, 18:11–22, 47:12–25. There is no evidence that anyone bought a subscription to NVAIE due to the temporary use of “NVIDIA Modulus” as the name of NVIDIA’s physics toolkit. [redacted].[5]

[5] Moreover, other evidence in the record shows that NVIDIA customers ***did not*** purchase NVAIE subscriptions because of the name “Modulus” with NVIDIA’s physics toolkit. For example, [redacted]

Moreover, it is also facially implausible that any NVIDIA customers purchased an NVAIE subscription on a mistaken belief that they were dealing with Plaintiffs. *Texas Pig Stands*, 951 F.2d at 696 (no disgorgement without "any evidence whatsoever of [defendant] using [plaintiff's] good will to sell [the accused product]"). Any customer that purchases an "***NVIDIA*** AI Enterprise" subscription knows it is dealing with ***NVIDIA***, not Plaintiffs. Indeed, the customers of the "NVIDIA AI ***Enterprise***" product are sophisticated enterprise professionals that would not mistakenly pay [redacted]—[redacted]—if they were mistakenly trying to gain access to Plaintiffs' financial exchange software. Ex. T at -379; Ex. U (NVAIE sales data). Further, to obtain an NVAIE subscription, a customer must specifically execute a software license with ***NVIDIA***, further underscoring to a customer that they are dealing with ***NVIDIA.*** Ex. N at 21:8–18 [redacted].

Plaintiffs have sought to excuse their failure to connect any NVAIE sales to the alleged infringement by arguing that it is NVIDIA's burden to disprove any such connection. Ex. B at 114:2–19. That is incorrect. While the Lanham Act imposes a burden shifting scheme when addressing the ***amount*** of disgorgement, 15 U.S.C. § 1117, it is still the plaintiffs' burden to prove ***whether*** any disgorgement of the profits from a product is equitable in the first place. *See Quick Techs*, 313 F.3d at 349–50 ("*Once an award is found to be appropriate*, a markholder is only entitled to those profits attributable to the unlawful use of its mark.") (citing *Texas Pig Stands, Inc.*, 951 F.2d at 696) (emphasis added). In any event, the facts presented above would be enough to meet a burden incorrectly shifted onto NVIDIA with respect to this issue.

---

[redacted]

* * *

In sum, just as in *Texas Pig Stands*, Plaintiffs have no evidence that NVIDIA "attempted to 'palm off' its [products] as those of [Plaintiffs]" or that NVIDIA's use of the name "Modulus" resulted in "the diversion of sales" from Plaintiffs to NVIDIA. 951 F.2d at 695–96. Therefore, "the total absence of all of these factors fatally undercuts" Plaintiffs' claim for disgorgement. *Id.*; *see also Retractable Techs., Inc.*, 919 F.3d at 878 ("In many cases, disgorgement will not be equitable where few or no sales were ever diverted from the plaintiff to the defendant, because disgorgement in such contexts would grant the plaintiff an unjustified 'windfall'.").

### C. Plaintiffs Have No Evidence Raising A Genuine Issue of Fact Regarding The Remaining Equitable Factors.

The absence of palming off and diverted sales alone warrants summary judgement on Plaintiffs' disgorgement claim. The four remaining equitable factors—intent, alternative remedies, delay, and public interest, *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 554–55 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001)—also weigh against disgorgement.

#### 1. Plaintiffs Have No Evidence That NVIDIA Chose The Name "Modulus" With The Intent To Confuse Or Deceive.

Plaintiffs have no evidence that NVIDIA selected the name "Modulus" for its free physics toolkit with "the intent to confuse or deceive," which is "an important factor which must be considered when determining whether an accounting of profits is appropriate." *Quick Techs.*, 313 F.3d at 349; *id.* at 349 n.9 ("[A]n infringing act is done willfully if it is done 'voluntarily and intentionally and with the specific intent to cause the likelihood of consumer confusion . . . ."). On the contrary, the undisputed evidence demonstrates that NVIDIA picked the name "Modulus" with ***no*** intent to confuse or deceive, [redacted] Ex. J at 86:8–14. Indeed, NVIDIA's practice of marketing its toolkit under the name "***NVIDIA***

Modulus," confirms that NVIDIA had no intent to deceive customers into believing the toolkit was Plaintiffs' product. Ex. Q; Ex. R; Ex. S at 114:21–25.

[redacted] "'mere awareness' of the senior user's mark ***does not*** 'establish[] . . . bad intent.'" *Streamline*, 851 F.3d at 456 ("We have recognized that a company may have a non-nefarious intent in using a mark with awareness of the senior user's mark."). The "intent inquiry focuses on whether the defendant intended to derive benefits from the reputation of the plaintiff," such as "evidence that the defendant made efforts 'to pass off' its product as that of [the plaintiff]'" or that the Defendant "intended to capitalize on the plaintiff's popularity" or "reputation." *Id.* at 455-56. No such evidence exists here.

Not only do Plaintiffs lack evidence of palming off (discussed above), Plaintiffs have no evidence that NVIDIA believed that Plaintiffs had any "popularity" or "reputation" in any industry, let alone that NVIDIA tried to capitalize on it. Indeed, [redacted] ***none*** of NVIDIA's documents even refer to Plaintiffs or their trademarks. [redacted] was done not as an attempt to profit from the mark." *Texas Pig Stands*, 951 F.2d at 695; *Joyce Yang Corp. v. Yi-Ding Int'l Holding Co.*, 2024 WL 4101927, at *7 (W.D. Tex. July 30, 2024) ("Awareness of the marks and continued use of the marks after receipt of the cease-and-desist letter is insufficient to establish that Defendants

intended to confuse the public or benefit from [Plaintiffs'] goodwill and reputation.").

Plaintiffs' remaining efforts to support NVIDIA's [redacted] fare no better. Ex. V at 11. For example, [redacted] Ex. V at 11; Ex. X. But NVIDIA could not have known about that ***confidential*** [redacted] NVIDIA picked the name "NVIDIA Modulus" in 2021, Ex. X at -040, and Plaintiffs also cannot explain how that [redacted] supports NVIDIA's intent to confuse consumers. Plaintiffs [redacted] have no evidence that NVIDIA ever marketed its physics toolkit as software for building stock exchanges, like Plaintiffs' software, let alone attempted to capitalize on Plaintiffs' reputation in that industry or any other. Ex. Z at 358:8–359:10 [redacted] Finally, Plaintiffs point out that NVIDIA [redacted] for the toolkit, Ex. V at 11, but that too says nothing about whether NVIDIA intended to create confusion—if anything, NVIDIA's decision to open source its physics toolkit would only further distinguish NVIDIA's product from Plaintiffs' proprietary, ***closed***-source financial software. Ex. D at -158.

Ultimately, the absence of any evidence that NVIDIA chose the name "Modulus" with intent to confuse or deceive consumers undercuts the propriety of any disgorgement award. *Neutron Depot, L.L.C. v. Bankrate, Inc.*, 798 F. App'x 803, 807 (5th Cir. 2020) ("We regularly reverse juries' profit-disgorgement awards for lack of evidence of willfulness.").

**2. Alternative Remedies Have Resolved Plaintiffs' Infringement Claims.**

As for "the adequacy of other remedies," *Retractable Techs.*, 842 F.3d at 900–01, NVIDIA

already renamed its physics toolkit from "Modulus" to "NVIDIA PhysicsNeMo" in March 2025. Ex. M. This factor thus provides an additional reason why no disgorgement of profits is warranted. *Retractable Techs.*, 919 F.3d at 880–81 ("[W]hen a Lanham Act plaintiff has already received or will benefit from substantial injunctive relief, disgorgement may amount to a windfall." (quotations omitted)); *Texas Pig Stands*, 951 F.2d at 696 ("The granted permanent injunction adequately remedies the complained-of infringement, and awarding [Plaintiff] any of [Defendant's] profits would be far from equitable -- it would be a windfall.").

**3. Plaintiffs' Years-Long Delay In Filing This Lawsuit Undercuts The Propriety Of A Disgorgement Award.**

NVIDIA announced that it was renaming its physics toolkit to "NVIDIA Modulus" in November 2021, Ex. I, yet Plaintiffs did not file this trademark infringement suit until April 2024—almost three years later. Dkt. 1. Plaintiffs' multi-year delay "counsel[s] against" an award of disgorgement. *Reservoir, Inc. Truesdell*, 1 F. Supp. 3d 598, 619 (S.D. Tex. 2014) (that plaintiff "waited nearly three years before filing suit to enjoin Defendant's use of the [trademarks]" weighs against disgorgement award).

Plaintiffs claim in their Interrogatory responses that [redacted]. Ex. O at 30. [redacted] Ex. AA. [redacted] *Id.* at -061. [redacted]

**4. The Public Interest Also Weighs Against Disgorgement.**

The final factor asks whether there is a "public interest in making the [alleged] misconduct unprofitable." *Retractable Techs., Inc.*, 842 F.3d at 900–01. Here, setting aside the fact that there has been no infringement at all, the undisputed facts show that NVIDIA used the name "Modulus" on a free product, and thus generated no profits from selling the product bearing Plaintiffs' trademark. Moreover, none of the facts described above support any "public interest" in disgorging profits from NVAIE, a fundamentally different product that does not bear the Plaintiffs' marks at all. Regardless, the Fifth Circuit has made clear that this factor alone is insufficient to support disgorgement. *Quick Techs.*, 313 F.3d at 350 ("[P]rinciples of equity still do not weigh in favor of an award of profits" when "only two *Pebble Beach Co.* factors [public interest and unreasonable delay]…are arguably applicable.").

* * *

In all, when viewing the evidence in a light most favorable to Plaintiffs, disgorgement is not equitable. Plaintiffs' lack of evidence of diverted sales or palming off fatally undercuts their request for disgorgement, and the remaining equitable factors weigh ***against*** disgorgement.

## II. DISGORGEMENT IS ALSO IMPROPER BECAUSE THERE IS NO CAUSAL LINK BETWEEN THE ALLEGED INFRINGEMENT AND NVIDIA'S SALES OF NVAIE.

As an independent basis for summary judgment of no disgorgement, NVIDIA has no "profits attributable to the infringement." *Pebble Beach*, 155 F.3d at 554. "The 'attribution' requirement ensures that once the district court has determined disgorgement is equitable, a defendant will only be forced to disgorge profits attributable to the Lanham Act violation." *Retractable Techs.*, 919 F.3d at 878.

No profits attributable to infringement exist here, because NVIDIA's physics toolkit is—and always has been—***free***. Ex. Q ("NVIDIA Modulus is an open-source, freely available AI framework for developing physics-ML models."); Ex. AB ("NVIDIA PhysicsNeMo is an open-

source, Python-framework for building, training, and fine-tuning physics AI models at scale"). Anyone can download it for free from NVIDIA's website or third-party platforms.[6] Ex. Q; Ex. AB. Because NVIDIA has made no profit from the product at all, Plaintiffs do not even attempt to claim any disgorged profits from the physics toolkit.[7]

Nor is there any evidence that NVIDIA's temporary use of the name "NVIDIA Modulus" for its free physics toolkit caused any increased sales of NVAIE. To the contrary, as discussed above, Plaintiffs' damages expert [redacted] Ex. B at 78:18–79:5; *see also id.* at 77:19–78:2 [redacted]

Thus, "there is no basis for inferring that any of the profits received by [NVIDIA] from the sale of [its accused physics toolkit or NVAIE] are attributable to infringement," and there can be no disgorgement as a matter of law. *Texas Pig Stands*, 951 F.2d at 696.

## III. PLAINTIFFS ARE NOT ENTITLED TO AN INJUNCTION.

NVIDIA changed the name of its physics toolkit in March 2025 to "NVIDIA PhysicsNeMo" and no longer uses the accused "NVIDIA Modulus" name. Ex. M. And no reasonable concern exists that NVIDIA will use the name "NVIDIA Modulus" again in the future. *Neutron Depot, L.L.C. v. Bankrate, Inc.*, 798 F. App'x 803, 805 (5th Cir. 2020) (affirming summary judgment on no injunction relief where the defendant "immediately stopped using the mark and has not resumed using it."). Thus, as a matter of law, Plaintiffs are not entitled to

---

[6] Plaintiffs have identified no differences between the version of NVIDIA's physics toolkit available through NVAIE and the free version, and the evidence supports that they are the same. Ex. N at 33:21–34:16.

[7] [redacted]

injunctive relief. *New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 31 (3d Cir. 1985) ("[I]n injunction cases, the cessation of the conduct complained of makes the case moot if subsequent events make it clear that the wrongful behavior could not reasonably be expected to recur").

## **CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment as to Plaintiffs' equitable claims for disgorgement of profits and injunctive relief.

Dated: March 27, 2026, 2026

Respectfully submitted,

*<u>/s/ Patrick J. Walters</u>*
Bradley D. Coburn
Texas State Bar No. 24036377
**SHELTON COBURN LLP**
311 RR 620 S, Suite 200
Austin, TX 78734
Email: coburn@sheltoncoburn.com
Telephone: (512) 453-6402
Facsimile: (512) 263-2166

John M. Desmarais (admitted *pro hac vice*)
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Telephone: (212) 351-3400
Facsimile: (212) 351-3401
Email: JDesmarais@desmaraisllp.com

Adam Steinmetz (admitted *pro hac vice*)
Sumeet Dang (admitted *pro hac vice*)
Atifah Safi (admitted *pro hac vice*)
Patrick Walters (admitted *pro hac vice*)
**DESMARAIS LLP**
1899 Pennsylvania Ave NW, Suite 400
Washington, D.C. 20006
Telephone: (202) 451-4900
Facsimile: (202) 451-4901
Email: ASteinmetz@desmaraisllp.com
Email: SDang@desmaraisllp.com
Email: ASafi@desmaraisllp.com
Email: PWalters@desmaraisllp.com

Eric J. Ball (admitted *pro hac vice*)
**FENWICK & WEST LLP**
Silicon Valley Center
801 California Street
Mountain View, CA 94041
Telephone: (650) 988-8500
Facsimile: (650) 938-5200
Email: eball@fenwick.com

Garner Kropp (admitted *pro hac vice*)
**FENWICK & WEST LLP**
555 California Street, 12th Floor

San Francisco, CA 94104
Telephone: 415-875-2300
Facsimile: 415-281-1350
Email: gkropp@fenwick.com

***Counsel for Defendant NVIDIA Corp.***